David L. Cook, Esq.
SILLS CUMMIS & GROSS P.C.
One Riverfront Plaza
Newark, New Jersey 07102
Tel. (973) 643-7000
Fax (973) 643-6500
dcook@sillscummis.com

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| USI International Inc., <br><br> Plaintiff, <br><br> v. <br><br> Festo Didactic Inc., <br><br> Defendant. | Civil Action No.: 3:15-cv-08451 (MAS)(TJB) <br><br> **AMENDED COMPLAINT** |

Plaintiff USI International Inc. ("USI"), by way of Complaint against Defendant Festo Didactic Inc. ("Festo"), alleges as follows with respect to itself and its own actions, and upon information and belief as to all other matters:

## THE PARTIES

1. Plaintiff USI is an Icaza Belize Trust corporation with an address at 60 Market Square, PO Box 364, Belize City, Belize.

2. Upon information and belief, defendant Festo is a New Jersey corporation with an address at 607 Industrial Way West, Eatontown, New Jersey 07724.

## INTRODUCTION

3. This action arises from Festo's refusal to honor a contractual obligation to pay USI its fee in the amount of at least $2,774,840.25. In April of 2012, USI entered into an

agreement with Lab-Volt Systems, Inc. ("Lab-Volt") to facilitate the sale of Lab-Volt electronic training equipment through the United States government for the government of Oman. The agreement provided that USI would receive 25% of Lab-Volt's total contract price for its services if the equipment was purchased at full Lab-Volt list price. As per numerous prior dealings between USI and Lab-Volt, USI would realize 100% of any additional mark-up in the final contract price. In or about June 2014, defendant Festo acquired Lab-Volt. Thereafter, on October 10, 2014, the deal originated by USI closed, and Festo was awarded an $11,099,361 contract to sell equipment through the United States government to the government of Oman.

4. Despite repeated assurances by Lab-Volt that it would honor its agreement, and that Festo was aware of Lab-Volt's commitment, Festo has ignored USI's requests for payment.

## JURISDICTION

5. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(2), because the Plaintiff and the Defendant are a citizen of a state and a citizen of a foreign state. Further, the amount in controversy exceeds several million dollars and thus is well-above the statutory minimum.

6. Venue as to Defendant is proper in this judicial district because Defendant Festo is headquartered and has its principle place of business in Eatontown, New Jersey, and some of the acts complained of occurred in this judicial district.

## FACTUAL ALLEGATIONS

7. This matter arises from an agreement between Lab-Volt and USI under which USI would be compensated for having introduced and brokered a deal for the sale of goods by Lab-Volt with the Military Technical College of Oman ("MTCO").

8. In late March 2012, USI learned of an expiring opportunity to sell various electronics training equipment to MTCO through funding allocated to the government of Oman through an offset program with the United States government.

9. USI brought this opportunity to Jeremy Duggan, a senior executive with Lab-Volt, who expressed immediate interest in the opportunity.

10. On or about April 6, 2012, USI, after selecting Lab-Volt, submitted an initial offer to MTCO including approximately $9.3 million dollars of Lab-Volt goods and services.

11. USI's offer to MTCO was based on documentation from Lab-Volt showing list pricing to USI, which included a 25% commission for USI. The breakdown of the $9.3 million dollars included approximately $5.6 million representing Lab-Volt's selling price, an additional $1.8 million representing USI's 25% commission (if Lab-Volt received its final selling price of $5.6 million), and an additional 25% USI mark-up of approximately $1.9 million (totaling approximately $9.3 million). The additional mark-up was to be paid 100% to USI. Both the 25% commission and additional mark-up were "baked" into the final price offered to MTCO.

12. On or about April 10, 2012, Lab-Volt confirmed in a letter agreement that it had agreed to work exclusively with USI on its efforts to sell equipment to MTCO, and that it had agreed to pay USI 25% if the goods offered in the April 9 submission were purchased at Lab-Volt's full list price: "This letter is to confirm that Lab-Volt is working exclusively with USI International, Inc. exclusively on the current Oman Military Technical College offset funding direct purchase project. Under the terms of the funding we expect a direct order to Lab-Volt without a tender, and therefore Lab-Volt will pay the full agent's commission of 25% to USI International Inc. if the equipment is purchased at full Lab-Volt List Price."

13. The Lab-Volt list price thus included allowance for the payment of a 25% commission to USI. As stated, any additional mark-up by USI would be paid 100% to USI.

14. Shortly after the delivery by Lab-Volt of the Letter Agreement, USI and Lab-Volt learned that the purchases would be made through the United States government's Foreign Military Sales ("FMS") program. As a result, the sale would be made by Lab-Volt to the United States government, and the United States would then provide the goods sold to MTCO. The goods to be sold remained the same goods identified in the offer made by USI.

15. On or about April 18, 2012, Lab-Volt, through an email from Mr. Duggan, advised USI that the transaction had to be pursued through an FMS transaction, but that Lab-Volt was able to participate in that program because Lab-Volt was a "US Company". Although Duggan advised that under FMS transactions, commissions had to be authorized by the end buyer (the government of Oman) Duggan stated that he expected that Lab-Volt would be able to pay commission to USI. He also advised that the deal might take two years to finalize because of the involvement of the U.S. government. However, Duggan indicated, in effect, that the additional 25% markup (beyond the commission) could not be charged and that the final contract price would be "drastically" reduced. Because of this, USI was under the impression that it would receive a straight 25% commission from the contract price.

16. On April 20, 2012, Duggan emailed again. Confirming that the deal was to be completed through the FMS program, Duggan reiterated that Lab-Volt would honor its obligation to pay USI a fee for the services it had provided in both finding that buyer and preparing the initial offer to MTCO.

17. Upon receiving confirmation that Lab-Volt intended to honor its obligation to USI, USI continued to support Lab-Volt in pursuing the transaction.

4

18. On or about June 19, 2012, well after the parties understood this would be an FMS deal, USI received confirmation that the prices Lab-Volt had quoted to the federal government were Lab-Volt's list prices previously provided to USI in April. Those prices continued to include a 25% commission for USI, including for a few items added to the transaction after USI's initial April offer.

19. By email from Mr. Duggan dated June 19, 2012, Lab-Volt provided a pro-forma to USI.

20. In the pro-forma attached to Mr. Duggan's June 19, 2012 email, the asking prices did not include the additional mark-up. Lab-Volt falsely represented to USI that this pro-forma accurately reflected the deal being pursued in the FMS transaction.

21. USI relied on this representation when concluding it would only be entitled to a straight 25% commission.

22. Lab-Volt reiterated that it would pay commission to USI on the entire list of included products, excluding commission only on training, installation, and shipping, which were being priced at Lab-Volt's actual cost.

23. Subsequent to the filing of the original complaint in this action, USI ascertained, in or about July 2017, through a document exchange during discovery, that Lab-Volt may have actually charged the federal government in the FMS transaction additional mark-ups together with the 25% commission. In other words, Lab-Volt quoted the government similar asking prices to those that were utilized by USI when it presented the deal to MTCO originally. By doing this, Lab-Volt misrepresented to USI that it would only be entitled to a 25% commission on the $11,099,361 price as opposed to receiving 100% of an approximate fee of $2 million dollar carve out of the final contract price attributable to the additional USI mark-up.

24. In July 2012, Mr. Duggan of Lab-Volt further updated USI on the progress of the deal, forwarding Lab-Volt's communications with its federal government contact, Colonel Robert Hoffman to USI.

25. Lab-Volt continued to provide updates on the progress of the transaction, and reiterated its obligation to pay a fee to USI on multiple occasions. For instance, on October 9, 2012, Mr. Duggan updated USI on the progress of the deal. Duggan advised that Lab-Volt had hired a new executive, Dan Rodriguez, and confirmed that "both Dan and Peter are fully aware of the commitment to you to pay the consulting contract we discussed." Additional communications concerning the progress of the transaction were exchanged between USI and Lab-Volt in 2013 and early 2014.

26. In May 2014, USI became aware that Lab-Volt was in the process of being acquired by Festo Didactic, Inc. After demanding, and receiving, verbal assurances from Lab-Volt that Lab-Volt and Festo would honor the contract, USI demanded confirmation in writing in emails dated May 22 and May 27, 2014 that both Lab-Volt and Festo would honor their commitment to pay USI the fee as agreed in the April 10, 2012 letter. On May 28, 2014, Mr. Duggan emailed USI and stated: "In response to your emails of May 22 and May 27 - As you know Lab-Volt recognizes my letter of April 10, 2012 as a commitment to USI International in regard to the Oman project. In addition I confirm that Festo has been informed of this commitment." Mr. Duggan forwarded this email as the Senior Vice President of International Sales & Marketing for Lab-Volt Systems, Inc.

27. At all times throughout this process, Lab-Volt never denied or disputed that it was obligated to pay commission to USI for its services in originating and assisting with the transaction.

28. Upon information and belief, in June 2014, Festo acquired Lab-Volt.

29. Upon information and belief, Festo assumed all of Lab-Volt's liabilities in the acquisition.

30. Upon information and belief, on or about October 10, 2014, the United States Naval Air Warfare Training System Division, Orlando, Florida awarded a contract to Festo for the sale of training devices to the government of Oman in the amount of $11,099,361 (the "Sale"). Despite repeated requests prior to this litigation, USI was not provided with a complete copy of the signed contract.

31. Upon information and belief, the contract was awarded under the Foreign Military Sales Program, and included items initially offered to MTCO in USI's offer of April 6, 2012, as well as additional items which Lab-Volt had previously agreed were included in USI's exclusive agreement with Lab-Volt at the prices quoted in Lab-Volt's June 12, 2012 offer.

32. Accordingly, Lab-Volt must have advised the federal government, and obtained written authorization from the government of Oman to charge a price that included a 25% commission to USI, as required for it to honor its obligations to USI, and to comply with federal regulations requiring pricing of FMS transactions without unauthorized commissions. In fact, it appears that the final contract price also included substantial additional mark-ups.

33. Despite the successful award of the contract originally sourced by USI, and payment by the federal government to Lab-Volt, Lab-Volt has now refused to pay the compensation due to USI under the April 10, 2012 agreement, repeatedly reaffirmed and ratified by Lab-Volt in communications with USI in April 2012, June 2012, October 2012, and May 2014.

34. USI has repeatedly requested payment of its fees, including its 25% fee in the amount of $2,774,840.25.

35. Festo has rejected these requests.

## FIRST COUNT
## Breach of Contract

36. Plaintiff repeats and realleges each and every allegation set forth in the foregoing paragraphs of the Complaint as if same were fully set forth herein.

37. Under the Agreement, Festo, as Lab-Volt's successor, owes contractual duties to Plaintiff.

38. Lab-Volt and Festo were obligated to pay to USI the agreed-upon commission of 25% for all of the goods it sold at Lab-Volt's list price in the Sale as well as 100% of any additional mark-up that was paid.

39. Further, Lab-Volt and Festo were obligated to take any steps necessary in the contracting process to obtain the authorization of the government of Oman to pay this fee to USI.

40. By reason of the foregoing, Festo has breached its contractual duties with respect to Plaintiff, including but not limited to the terms of the Agreement, by failing to pay 25% of the total contract price to USI collected by Lab-Volt as well as 100% of any additional mark-up that was paid, and/or by failing to secure authorization to pay the fee from the government of Oman.

41. As a direct and proximate result, Plaintiff has incurred, and continues to incur, damages in an amount to be determined at trial.

WHEREFORE, Plaintiff demands judgment against Festo as follows:

    (a)    Awarding damages, plus pre- and post-judgment interest;

    (b)    Granting legal fees and costs of suit; and

  (c)  Granting such other and further relief as the Court may deem just and equitable.

## SECOND COUNT
## Unjust Enrichment

42. Plaintiff repeats and realleges each and every allegation set forth in the foregoing paragraphs of the Complaint as if same were fully set forth herein.

43. USI conferred a benefit on Festo by providing services to Lab-Volt, for which USI reasonably expected it would be compensated.

44. USI's services enabled Festo to obtain the contract awarded to it by the United States Naval Air Warfare Center Training Systems Division, Orlando Florida.

45. Festo's selling prices included at least a 25% margin to pay USI's commission as well as additional mark-ups which are owed in full to USI.

46. Festo has retained all of the proceeds of its agreement with the United States government, and provided no compensation to USI for its services.

47. This benefit was rightfully owed to USI and therefore obtained at USI's expense.

48. Festo will be unjustly enriched if it is permitted to retain the benefit.

WHEREFORE, Plaintiff demands judgment against Festo as follows:

  (a)  Awarding damages, plus pre- and post-judgment interest;

  (b)  Granting legal fees and costs of suit; and

  (c)  Granting such other and further relief as the Court may deem just and equitable.

## THIRD COUNT
### Fraud

49. Plaintiff repeats and realleges each and every allegation set forth in the foregoing paragraphs of the Complaint as if same were fully set forth herein.

50. By transmitting the false pro-forma to USI on June 19, 2012, Lab-Volt misrepresented the structure and the value of the transaction.

51. Lab-Volt made such misrepresentation with the knowledge that it was false and with the intent that USI rely upon the false pro-forma.

52. USI reasonably relied upon the false pro-forma and has been injured as a result.

WHEREFORE, Plaintiff demands judgment against Festo as follows:

(a) Awarding damages, plus pre- and post-judgment interest;

(b) Granting legal fees and costs of suit; and

(c) Granting such other and further relief as the Court may deem just and equitable.


Dated:   Newark, New Jersey
         June 21, 2018

                                    SILLS CUMMIS & GROSS P.C.

                                    _____
                                    David L. Cook

                                    One Riverfront Plaza
                                    Newark, NJ 07102
                                    Tel. (973) 643-7000
                                    Fax (973) 643-6500
                                    dcook@sillscummis.com

10

## CERTIFICATION PURSUANT TO L. CIV. R. 11.2 AND 201.1

Plaintiff, through its undersigned counsel, hereby certifies, pursuant to Local Civil Rule 11.2, that the above-captioned matter in controversy, to the best of undersigned counsel's knowledge, is not the subject of any other action pending in any court, or of any pending arbitration or administrative proceeding.

Plaintiff further certifies, pursuant to Local Civil Rule 201.1, that it is seeking monetary damages believed to be greater than $150,000, exclusive of interest and costs and any claim for punitive damages. Therefore, this action is not appropriate for compulsory arbitration.

Dated:   Newark, New Jersey
         June 21, 2018

                                    SILLS CUMMIS & GROSS P.C.

                                    _____
                                    David L. Cook

                                    One Riverfront Plaza
                                    Newark, NJ 07102
                                    Tel. (973) 643-7000
                                    Fax (973) 643-6500
                                    dcook@sillscummis.com