**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| USI INTERNATIONAL, INC.,<br><br>Plaintiff,<br><br>v.<br><br>FESTO DIDACTIC, INC.,<br><br>Defendant. | Civil Action No. 15-8451 (MAS) (TJB)<br><br>MEMORANDUM OPINION |

**SHIPP, District Judge**

This matter comes before the Court on Defendant Festo Didactic, Inc.'s ("Festo") Motion for Partial Summary Judgment under Federal Rule of Civil Procedure 56(a) to dismiss Count Three of Plaintiff USI International, Inc.'s ("USI") Amended Complaint. (ECF No. 122.) USI opposed (ECF No. 124), and Festo replied (ECF No. 125). The Court has carefully considered the parties' submissions and decides the motion without oral argument under Local Civil Rule 78.1. For the reasons stated below, the Court grants Festo's Motion.

**I.   BACKGROUND**[1]

As a threshold matter, the Court notes that the parties agree to few facts. The Court thus relies on the parties' statement of undisputed facts and attached exhibits to help flesh out the dispute. The Court also references the Amended Complaint for additional context.

---

[1] On a summary judgment motion, the Court will "view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor." *Saldana v. Kmart Corp.*, 260 F.3d 228, 232 (3d Cir. 2001) (quoting *Armbruster v. Unisys Corp.*, 32 F.3d 768, 777 (3d Cir. 1994)).

This matter arises out of correspondence between USI, a Belize corporation, and Lab-Volt Systems, Inc. ("Lab-Volt") involving the sale of electronic training equipment to the Government of Oman. (Am. Compl. ¶ 3, ECF No. 35; Def.'s Statement of Undisputed Material Facts ("Def.'s SOF") ¶¶ 1-2, ECF No. 122-1.) USI alleges that it entered into an agreement with Lab-Volt on April 10, 2012 (the "Lab-Volt Agreement"), in which Lab-Volt agreed to pay USI commission for brokering a deal for military equipment between Lab-Volt and the Omani government. (Def.'s SOF ¶ 10; Pl.'s Opp'n Br., Ex. A ("Apr. 10, 2012 Correspondence"), ECF No. 124-2.) Shortly thereafter, on behalf of Lab-Volt, USI submitted a $9.3 million offer to a military college in Oman. (Am. Compl. ¶ 10.) According to USI, upon acceptance of that offer by the military college, the Lab-Volt Agreement operated to apportion the proceeds as follows: (1) $5.6 million in sales proceeds to Lab-Volt, (2) a 25% commission based on the sales proceeds (roughly $1.8 million) to USI, and (3) an additional 100% markup for any additional services (roughly $1.9 million) to USI. (Am. Compl. ¶¶ 10-11.) This dispute concerns the latter two contractual provisions, which the Court will refer to as the Commission Provision and the Markup Provision, respectively.

Naturally, not all went according to plan. Following USI's initial brokering of the deal, the parties learned that the U.S. Government would ultimately purchase the equipment as an intermediary between Lab-Volt and the military college. (Def.'s SOF ¶ 24 n.2; Am. Compl. ¶ 14.) To that end, in June 2012, Lab-Volt sent USI an invoice (the "First Invoice") that showed that it submitted an approximately $8.56 million bid to the U.S. Government. (Def.'s SOF ¶ 24 (citing Ex. SSS, ECF No. 122-6).) Adding to the complexity, two years after that invoice, Festo acquired Lab-Volt and assumed its liabilities, including the Lab-Volt Agreement. (*Id.* ¶ 4; Pl.'s Responsive Statement of Material Facts ("Pl.'s Resp. SOF") ¶ 4, ECF No. 124-17.) In October 2014, the U.S. Government finalized a deal with the Oman military college, in which Festo agreed to sell roughly

$11.1 million in military equipment and related services to the military college through the U.S. Government. (Def.'s SOF ¶ 9.)

With the deal wrapped up, USI then sought its 25% commission under the Commission Provision of the Lab-Volt Agreement. (Am. Compl. ¶¶ 33-35.) Relevant to this dispute, at the time, USI did not think it was entitled to any markup because it assumed the final deal did not include any services falling under the Markup Provision. (*Id.* ¶ 23.) In any event, Festo refused to pay. (*Id.* ¶¶ 34-35.) USI then sued to recover its commission, totaling approximately $2.77 million. (*Id.* ¶¶ 3-4, 34.) Thereafter, the Court dismissed without prejudice USI's claims for breach of the implied covenant of good faith and fair dealing and fraudulent inducement. (ECF No. 14.)

As part of discovery, USI contends that it learned that the final contract price included provisions for services, which would have entitled USI to additional compensation under the Markup Provision. (Am. Compl. ¶ 23.) Specifically, USI alleges that the First Invoice fraudulently omitted an additional markup that appeared in the final contract. (*Id.* ¶¶ 12, 18-20, 23.) As evidence, USI points to a second June 2012 invoice (the "Second Invoice") that Lab-Volt sent to the U.S. Government that showed additional services. (Pl.'s Disputed Material Facts ¶¶ 10-13, ECF No. 124-18.) Considering the dueling invoices, USI amended its complaint by adding allegations that Lab-Volt breached the Lab-Volt Agreement by failing to pay approximately $2 million under the Markup Provision. (Am. Compl. ¶ 23.) USI also added a fraud claim. (*Id.* ¶¶ 49-52.)

Putting it all together, now before the Court is USI's Amended Complaint, which alleges $2.77 million in contract damages stemming from the Commission Provision as well as any additional markup that the U.S. Government paid to Festo under the Markup Provision of the Lab-Volt Agreement. (*Id.* ¶¶ 23, 34.) The Amended Complaint raises three causes of action: breach of

contract, unjust enrichment, and fraud. (*Id.* ¶¶ 36-52; Def.'s SOF ¶ 7.) Festo moved for partial summary judgment on the fraud claim. (ECF No. 122.)

## II. **LEGAL STANDARD**

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine if there is sufficient evidentiary support such that "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material if it could "affect the outcome of the suit under governing law." *Kaucher v. Cnty. of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006). Disputes over irrelevant or unnecessary facts will not preclude a court from granting summary judgment. The party moving for summary judgment has the initial burden of proving an absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

If the nonmoving party bears the burden of proof at trial, the movant may discharge its burden by pointing to an absence of evidence necessary to support the nonmovant's claim. *Id.* at 325. Alternatively, a moving party may submit affirmative evidence that negates a material element of the nonmoving party's claim. *See id.* at 325-31. If the movant brings such affirmative evidence or makes a showing that the nonmovant lacks evidence essential to its claim, the burden shifts to the nonmoving party to set forth "specific facts showing that there is a genuine [dispute] for trial." Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324. The burden of persuasion, however, rests ultimately on the nonmoving party to establish each element necessary to succeed on the claims on which it bears the burden of proof at trial. *Id.* at 322.

To decide whether a genuine dispute of material fact exists, the Court must consider all facts, drawing all reasonable inferences in a light most favorable to the nonmoving party. *Kaucher*, 455 F.3d at 423. But, on a motion for summary judgment, "the judge's function is

not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine [dispute] for trial." *Anderson*, 477 U.S. at 249. Absent a genuine dispute for trial, summary judgment as a matter of law is proper.

**III.   DISCUSSION**

USI argues that Lab-Volt deceived it into believing the U.S. Government awarded a total contract price that did not include additional markups and, therefore, attempted to cheat it out of what it was owed under the parties' agreement. Specifically, USI claims that Lab-Volt sent it the First Invoice in June 2012 to carry out its deception and wrongfully avoid paying it the amount due under the Markup Provision, and as such is liable under common law fraud. To prove fraud, USI must demonstrate five elements: "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." *Gennari v. Weichert Co. Realtors*, 691 A.2d 350, 367 (N.J. 1997) (internal citations omitted).

Festo counters that the Court must grant summary judgment on USI's fraud claim first because USI fails to prove reliance or damages and second because the economic loss doctrine bars the fraud claim as a matter of law. (Def.'s Moving Br. 5-14, ECF No. 122-7.) The Court begins with Festo's second argument. The economic loss doctrine provides that "a party typically may not recover in tort for damages caused by a breach of contract." *Meng v. Du*, No. 19-18118, 2020 WL 4593273, at *4 (D.N.J. Aug. 11, 2020) (quoting *Montclair State Univ. v. Oracle USA, Inc.*, No. 11-2867, 2012 WL 3647427, at *4 (D.N.J. Aug. 23, 2012)). The doctrine typically bars fraud claims that are not "extraneous to the contract" and based on the "fraudulent performance of the contract itself." *Unifoil Corp. v. Cheque Printers & Encoders Ltd.*, 622 F. Supp. 268, 271 (D.N.J. 1985) (quoting *Foodtown v. Sigma Mktg. Sys., Inc.*, 518 F. Supp. 485, 490 (D.N.J. 1980)). Indeed, where a party seeks to recover in fraud losses "to which their entitlement only flows from

5

a contract," the economic loss doctrine prohibits such a claim. *Bracco Diagnostics, Inc. v. Bergen Brunswig Drug Co.*, 226 F. Supp. 2d 557, 562 (D.N.J. 2002) (quoting *Duquesne Light Co. v. Westinghouse Elec. Co.*, 66 F.3d 604, 618 (3d Cir. 1995)). The upshot is that a party must prove that the fraudulent conduct is "extrinsic" to the contract, such as fraud in the inducement. *See State Cap. Title & Abstract Co. v. Pappas Bus. Servs., LLC*, 646 F. Supp. 2d 668, 676 (D.N.J. 2009). A claim is deemed "extraneous or extrinsic to a contract if it breaches a duty separate and distinct from the performance of the agreement's terms." *Pac. Controls, Inc. v. Cummins Inc.*, No. 19-03428, 2019 WL 6830790, at *10 (S.D.N.Y. Dec. 13, 2019) (quoting *Montclair State Univ.*, 2012 WL 3647427, at *5 (internal quotation marks omitted)).

With that standard set forth, the Court now considers whether to grant summary judgment on USI's fraud claim under the economic loss doctrine. The Court agrees with Festo that USI has not put forth sufficient evidence to defeat application of the doctrine. USI claims that Lab-Volt committed fraud by "misrepresent[ing] the structure and the value of the transaction" through the First Invoice. (Am. Compl. ¶ 50.) But that claim "[is] identical to the loss of the benefit of the contract"—that is, the rightful amount of commission based on the Lab-Volt Agreement. *Meng*, 2020 WL 4593273, at *5; *cf. Red Hawk Fire & Sec., LLC v. Siemens Indus. Inc.*, 449 F. Supp. 3d 449, 466 (D.N.J. 2020) ("These allegations are undoubtedly related to [defendant's] performance under the contract, namely, whether it properly followed its obligations under the [agreement]."). To be sure, USI has proffered no evidence that Festo violated a non-contractual duty. *See Montclair State Univ.*, 2012 WL 3647427, at *5 ("An alleged misrepresentation is extraneous to an agreement when it breaches a duty 'separate and distinct from the performance' of the agreement's terms." (quoting *Chen v. HD Dimension, Corp.*, No. 10-863, 2010 WL 4721514, at *9 (D.N.J. Nov. 15, 2010))).

USI attempts to rebut its failure of proof by arguing that the Lab-Volt Agreement did not contractually obligate Lab-Volt to provide USI with an invoice. (Pl.'s Opp'n Br. 7.) According to USI, "[t]his conduct is clearly extrinsic to the underlying contract" because it goes "beyond the terms of the agreement between the parties." (*Id.*) The Court is not persuaded. Even if USI is correct about the contract's terms, it has not identified a freestanding legal duty that goes beyond the performance of the contract. *See 7-Eleven, Inc. v. Maia Inv. Co.*, No. 14-8006, 2015 WL 1802512, at *6 (D.N.J. Apr. 17, 2015) (finding a fraud claim based on inaccurate inventory and sales records barred by the economic loss doctrine as they relate to calculating the correct amount of gross profits owed to plaintiff as part of the contract). At bottom, USI's fraud claim is centered on the First Invoice cheating USI out of its *contractual* entitlement to any proceeds under the Markup Provision of the Lab-Volt Agreement. (Am. Compl. ¶¶ 49-52.) Tellingly, USI amended its complaint to allege additional damages for Festo's violation of the Markup Provision under its breach of contract claim. (*See id.* ¶¶ 23, 36-41.) The Court, therefore, disagrees that the alleged fraud is extrinsic to the contract.[2]

Finally, USI argues that the Court already decided this issue in allowing it to amend its complaint and supplement the fraud count in June 2018. (*See* Pl.'s Opp'n Br. 6-7 (citing Memorandum Opinion, Hon. Tonianne J. Bongiovanni, U.S.M.J. ("Memo. Op."), ECF No. 33).) This argument is unpersuasive. In allowing amendment, Judge Bongiovanni found that "[USI]'s

---

[2] USI does not argue that the First Invoice constitutes fraud in the inducement, a recognized exception to the economic loss doctrine. By USI's own recitation of the facts, Lab-Volt sent it the First Invoice two months after the agreement was consummated. (Am. Compl. ¶¶ 12-13, 50; *see generally* Pl.'s Opp'n Br. 2-7, ECF No. 124.) The First Invoice, therefore, could not have induced USI to enter into the agreement. *Ross v. Celtron Int'l, Inc.*, 494 F. Supp. 2d 288, 298 (D.N.J. 2007) ("[B]ecause these alleged misstatements were made after the [contract] was executed and constitute promises to perform under that [contract], [p]laintiffs have only asserted a fraud in the performance claim.").

allegations adequately allege that [Festo]'s misrepresentations go beyond the underlying contract such that the economic loss doctrine does not make [USI]'s proposed fraud claim futile." (Memo. Op. 8.) A "futility analysis on a motion to amend is essentially the same as a Rule 12(b)(6) motion." *Synthes, Inc. v. Marotta*, 281 F.R.D. 217, 229 (E.D. Pa. 2012) (citing *Holst v. Oxman*, 290 F. App'x 508, 510 (3d Cir. 2008)). But "[b]oth the burden on the nonmoving party and the documents available to that party . . . differ significantly under the motion to dismiss and summary judgment standards." *Somerset Consulting, LLC v. United Cap. Lenders, LLC*, 832 F. Supp. 2d 474, 479 (E.D. Pa. 2011). Festo raised a meritorious argument that the economic loss doctrine bars USI's fraud claim such that, at this post-discovery juncture, USI must "go beyond the pleadings and come forward with specific facts indicating a genuine [dispute] for trial." *Connection Training Servs. v. City of Phila.*, 358 F. App'x 315, 318 (3d Cir. 2009). USI failed to cite any facts or materials in the record that reflect the alleged misrepresentation does not "relate to [Festo's] performance of the terms set forth in" the Lab-Volt Agreement or that the conduct is "unrelated to the performance of the contract as required under the economic loss doctrine." *Montclair State Univ.*, 2012 WL 3647427, at *6-8 (quoting *RNC Sys., Inc. v. Modern Tech. Grp., Inc.*, 861 F. Supp. 2d 436, 452 (D.N.J. 2012)).

Because "the gravamen of [USI]'s fraud claim—that [Festo] ultimately failed to perform in accordance with the Agreement—is identical to [USI]'s breach of contract claim," the economic loss doctrine bars recovery and summary judgment is warranted. *Ribble Co., Inc. v. Burkert Fluid Control Sys.*, No. 15-6173, 2016 WL 6886869, at *3 (D.N.J. Nov. 22, 2016). As such, the Court need not address whether USI raises a genuine dispute of material fact as to the elements of common law fraud because, either way, it is barred from bringing its fraud claim.

## IV.   CONCLUSION

For the reasons discussed above, Festo's Motion for Partial Summary Judgment is granted. The Court will issue an Order consistent with this Memorandum Opinion.

/s/ Michael A. Shipp

MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE